IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIFAH MUSTAPHA,<br><br>     Plaintiff,<br><br>     v.<br><br>JONATHON E. MONKEN,<br>individually and in his<br>official capacity as Acting<br>Director of the Illinois<br>State Police; PATRICK E.<br>KEEN, individually and in his<br>official capacity as Deputy<br>Director of the Illinois<br>State Police; and ILLINOIS<br>STATE POLICE,<br><br>     Defendants. | No. 10 C 5473<br><br>Judge Ronald A. Guzman<br><br>Magistrate Judge Arlander Keys |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kifah Mustapha, a Muslim of Middle Eastern national origin who resides in Burbank, Illinois, applied in November of 2009 to become a Chaplain with the Illinois State Police ("ISP"). Although he was initially approved for the position and permitted to attend training, on June 15, 2010, an ISP official notified Mr. Mustapha that he had not successfully passed the background investigation and that his application for appointment as an ISP Chaplain was denied. Between the time of his initial approval and the letter denying him the position, on January 5, 2010, the Investigative Project on Terrorism published an article on the Internet that described Mr. Mustapha - falsely, he alleges - as a "radical fundraiser" and identified him as an unindicted co-conspirator in a criminal case against the Holy

Land Foundation for Relief and Development and a member of the Muslim Brotherhood. Mr. Mustapha has sued the Illinois State Police, as well as the ISP's Director and Deputy Director, alleging violations of his constitutional and civil rights; more specifically, he alleges that he was denied the Chaplain position because of his affiliation with the Holy Land Foundation and other Islamic organizations, in violation of the First Amendment, and because of his race, national origin and religion, in violation of Title VII.

The case is before the Court on two related motions – Mr. Mustapha's motion to compel the FBI to comply with a subpoena he issued and the FBI's motion for a protective order precluding disclosure of certain information.

Mr. Mustapha's Motion to Compel:

On January 31, 2011, Mr. Mustapha issued a subpoena to the Chicago office of the FBI, seeking three things: (1) all documents relating to Mr. Mustapha's application to attend the FBI's Citizens' Academy in 2010; (2) all documents relating to the FBI's standards for accepting applications into the Citizens' Academy in 2011; and (3) all documents relating to the FBI's background investigation of Mr. Mustapha. At the FBI's request, counsel for Mr. Mustapha submitted an affidavit explaining why he wanted the requested materials and how they potentially related to Mr. Mustapha's suit against the ISP. In response to this

letter, the FBI produced the documents in its possession that it deemed responsive to the first request; these documents consisted of Mr. Mustapha's application to attend the Citizens' Academy; a form authorizing a law enforcement check; an access of non-FBI personnel to FBI facilities background data information form; a non-personnel consent to release information form; and a Privacy Act statement and consent form. Additionally, the FBI represented that it had no documents responsive to the second request. But, despite counsel's affidavit, the FBI declined to produce information responsive to the third request, on the grounds that the disclosure of such discovery would impair the effectiveness of the FBI's investigative techniques and procedures. Mr. Mustapha then filed a motion in this Court, seeking to compel the FBI to produce the subpoenaed materials. The FBI opposes the motion.

## The FBI's Motion for Protective Order:

Relatedly, the FBI has filed a motion seeking a protective order precluding the disclosure of two documents - the first is a Criminal History Report for Mr. Mustapha, and the second is an Intelligence Contribution Report for Mr. Mustapha. The FBI also seeks to preclude disclosure of testimony from three conversations between ISP officials and Chicago FBI Special Agent in Charge Robert Grant that occurred in connection with the ISP's background check on Mr. Mustapha. In each conversation Agent

Grant told the ISP that Mr. Mustapha would not pass an FBI background check if he applied for an FBI Chaplain position; Agent Grant then explained the basis for his opinion.

In support of its motion for a protective order, the FBI submitted, under seal, a declaration from Agent Grant, representing that the documents the FBI seeks to preclude from disclosure contain "sensitive law enforcement information, the disclosure of which would impair the FBI's investigative technique and procedures." Grant Declaration, ¶3. Mr. Mustapha opposes the motion, based upon the same reasoning he articulated in his motion to compel - he argues that there is simply no basis to preclude disclosure of these materials and information.

The Illinois State Police filed a separate response to the FBI's motion, agreeing to some extent with the FBI, but arguing that partial disclosure of the information is necessary for the ISP to defend itself in this action.

## Discussion

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." It is not unreasonable to assume that the ISP's decision to deny Mr. Mustapha's application

was based, at least in part, on information ISP received from the FBI. The letter denying Mr. Mustapha the position explained that the decision was made because he failed to successfully pass a background check, and the background check information came from the FBI. And an ISP memo makes clear that FBI information was considered – whether it was a formal report or simply one agent's off-hand opinion. *See* Plaintiff's Reply in Support of Motion to Compel, Exhibit D. In other words, Mr. Mustapha has sufficiently demonstrated relevance. The question is whether the information is or should be privileged.

"The purpose of the law enforcement privilege is to 'prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.'" *Santiago v. City of Chicago*, No. 09 C 3137, 2010 WL 1257780, at \*2 (N. D. Ill. March 26, 2010) (quoting *Ostrowski v. Holem*, 2002 WL 31956039, at \*2 (N.D. Ill. Jan.21, 2002); *Hernandez v. Longini*, 1997 WL 754041, at \*3 (N.D. Ill. Nov.13, 1997)). "The law enforcement privilege is not absolute; rather it is a qualified privilege under which the need for secrecy must be balanced against the plaintiff's need for access to the information." *Santiago*, 2010 WL 1257780, at \*2 (citing *Lepinka v. The Village of Franklin Park*, 2004 WL

626830, at *2 (N.D. Ill. March 26, 2004)).

In determining whether the law enforcement privilege applies, courts have considered and weighed a number of factors, including: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant to any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to plaintiff's case. *E.g., Santiago*, 2010 Wl 1257780, at *2; *Thayer v. Chiczewski*, Nos. 07 C 1290, 07 C 1406, 2009 WL 2192581, at *3 (N.D. Ill. July 20, 2009); *Kampien v. Individuals of Chicago Police Department*, 2002 WL 238443, at *4 (N.D. Ill. Feb. 19, 2002).

"The claim for application of the privilege is somewhat stronger' when law enforcement is seeking to protect ongoing investigations as contrasted with closed files, decisions to prosecute as contrasted with decisions not to prosecute, confidential informant identities as contrasted with names of incidental witnesses, confidential law enforcement methods and tactics as contrasted with simple interview materials, and evaluative opinions as contrasted with facts." *Santiago*, 2010 WL 1257780, at *2 (quoting *G-69 v. Degnan*, 130 F.R.D. 326, 332 (D.N.J.1990)).

Under the circumstances presented here, the relevant factors weigh in favor of disclosure. The documents that the FBI seeks to protect from disclosure consist of those "relating to the FBI's background investigation of Kifah Mustapha" (as per the subpoena); the Criminal History Report for Mr. Mustapha; and an Intelligence Contribution Report for Mr. Mustapha. Quite simply, there is nothing in any of these to demonstrate (or even suggest) that the subject discovery relates, in any way, to an ongoing investigation, to a decision to prosecute, to any confidential sources, or to any confidential methodology or procedures. There is nothing to indicate that Mr. Mustapha is or was the subject of an investigation - open or closed. The subject discovery does not seem to reflect or include any information from private citizens or confidential sources; Mr. Mustapha has no criminal

history and does not appear likely to be the subject of any criminal proceedings.  And there appears to be no other way for Mr. Mustapha to obtain this information.

The only fact that potentially weighs in favor of precluding disclosure is that the conversations with Agent Grant would appear to reflect his evaluations and opinions, not merely a recitation of facts.  But the evaluation is not particularly elucidating or analytical; Agent Grant simply noted that Mr. Mustapha would not pass an FBI background check if he applied to be a Chaplain with that agency.  In fact, the FBI's claims of harm are difficult to pin down; certainly the FBI has not demonstrated how the disclosure of the particular materials requested and identified would harm anyone or anything.  Agent Grant suggests in his declaration that disclosing the mere fact that someone is or is not the target of a terrorist investigation would impede the FBI's ability to do its job.  But no one is asking for that information here; Mr. Mustapha is simply asking for information relating to any background checks that were conducted in connection with his application for the Citizens' Academy and his application for the ISP Chaplain position.

The FBI has not demonstrated that the particular reports at issue here - the Criminal History Report for Mr. Mustapha and the Intelligence Contribution Report for Mr. Mustapha - are privileged.  The same is true with respect to documents relating

to any background investigation the FBI may have done in connection with Mr. Mustapha's application for the Citizens' Academy. To the extent the documents disclose information about other people – people who may have provided information, or others who may be linked in the reports to Mr. Mustapha, the FBI may redact that information. But the information relating to Mr. Mustapha is relevant and outside the scope of any privilege. The ISP recognizes as much by acknowledging that it will necessarily rely upon this information in defending itself against Mr. Mustapha's claims.

Similarly, the Court denies the request to preclude disclosure of information relating to the conversations Agent Grant had with ISP officials concerning Mr. Mustapha. According to Agent Grant's declaration, he indicated in conversations with the ISP that Mr. Mustapha would not pass an FBI background check. Although that's an opinion, not simply a recitation of facts, the FBI has not demonstrated that disclosure would in any way impair or impede any law enforcement activity or procedure. According to his complaint, Mr. Mustapha knew, because the ISP told him, that his application for the Chaplain job was being denied because he failed to pass a background check. Certainly information and documents relating to that background check are relevant. And Luis Tigera, the former ISP First Deputy Director who was involved in the decision to deny Mr. Mustapha the

Chaplain position, has admitted that he relied upon the information contained in the Criminal History Report and the Intelligence Contribution Report in making that decision. Declaration of Luis Tigera, ¶¶4-5 (attached as Exhibit B to Defendants' Response to the FBI's Motion for Protective Order).

Additionally, although Agent Grant's declaration generally explains how the disclosure of certain information and reports could impair law enforcement functioning, he does not explain how the disclosure of the specific documents and information at issue here would do so. To be sure, he has not explained how the disclosure of information relating to the background check would harm the FBI or any other law enforcement organization. The Court finds that the subpoenaed information is relevant and not privileged; so too the Criminal History Report for Mr. Mustapha, the Intelligence Contribution Report for Mr. Mustapha and the conversations between Agent Grant and ISP officials relating to Mr. Mustapha's background check.

None of this is to say that Mr. Mustapha has *carte blanche* to delve into the FBI's files or in seeking discovery from Agent Grant. Information that was not relayed to the ISP simply is not relevant to Mr. Mustapha's claims. And the ISP defendants have all represented that, beyond explaining that Mr. Mustapha would not pass an FBI background check, Agent Grant did not elaborate and provide any specifics or justification. See Declaration of

Patrick E. Keen, ¶¶6-8, 11 (attached as Exhibit A to Defendants' Response to the FBI's Motion for Protective Order); Tigera Dec., ¶¶6, 8; Declaration of Jonathon E. Monken, ¶¶6-7 (attached as Exhibit C to Defendants' Response to the FBI's Motion for Protective Order). Thus, although the limited disclosure by Agent Grant is discoverable, the reasoning behind that information is not.

### Conclusion

For the reasons explained above, the Court grants Mr. Mustapha's Motion to Compel the FBI's Compliance with Subpoena [#25] and denies the FBI's Motion for Protective Order [#51].

Dated: July 19, 2011

ENTER:

*Arlander Keys* 7/19/20
ARLANDER KEYS
UNITED STATES MAGISTRATE JUDGE